*In re* MARRIAGE OF ERIKA BENEVENTO, Petitioner-Appellant and Cross-Appellee, and FRANK BENEVENTO, Respondent-Appellee and Cross-Appellant.

First District (3rd Division)   No. 82—2741

Opinion filed September 21, 1983.

Lawrence Jay Weiner, Fredric Bryan Lesser, and Lee M. Weisz, all of Weiner, Neuman & Spak, and Jack R. Davis, both of Chicago, for appellant.

Edward D. Rosenberg, Steven R. Lake, Alan J. Toback, and Mary D. Paulsen, all of Lake, Rosenberg & Associates, Ltd., of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal in a marriage dissolution case by Erika Benevento, petitioner, from that portion of the order of the circuit court of Cook County awarding permanent custody of the couple's 3½-year-old daughter, Jennie, to respondent, Frank Benevento, with liberal visitation rights to petitioner. Respondent cross-appeals from that portion of the order which awarded petitioner $4,163 in attorney fees, contending that the amount is excessive.

The parties had been married for three years when the petition for dissolution was filed. It was the first marriage for respondent, who was 51 years old at the time of trial, and the second for petitioner, who was 42 years old at the time of trial. One child, Jennie, was born to the parties. Petitioner also has three children by a prior marriage, who lived in the marital home with their mother, respondent and their half-sister, Jennie. Roy Boland, 21, attends college; Janet Boland, 17, is a high school student; Randy Boland, 18, the middle child, also attends high school. He is autistic.

Gertrude Heckens, a mutual family friend of the parties, testified that petitioner kept a clean house and that all of the children were neat, clean and well-dressed. Petitioner testified that she has spent all her time caring for her children since the first one was born. She tes-

tified to her daily routine of care for Jennie and how she takes her shopping and to the doctor's office when necessary. She also stated that respondent never participated in the care of Jennie, never changing her diapers or feeding her. Petitioner had sole responsibility for Jennie's toilet training; respondent did not help her. She further stated she had to beg respondent to put safety locks on the cabinet doors to prevent Jennie from getting hold of dangerous substances and that respondent kept Jennie up past her bedtime.

Respondent testified that he took care of his daughter. He stated that petitioner does not properly care for Jennie and does not feed her properly. He also stated that petitioner has left Jennie alone at times. He further testified that he took his daughter for walks and took her to the zoo.

Dr. Marvin Ziporyn, a psychiatrist, testified at trial. He examined both parties and also Randy. He found no mental disorders in either petitioner or respondent. He testified that petitioner was very concerned about the welfare of her children, but was defensive about Randy's problems. Dr. Ziporyn diagnosed Randy as a juvenile schizophrenic, a condition of autism which causes him to focus on himself rather than deal with the outside world. Thus, errors in judgment can be made, which result in inappropriate behavior in a social situation. Dr. Ziporyn testified that after an initial denial, Randy told him that he (Randy) masturbates and had done so in the presence of Jennie. It was the doctor's opinion that Randy presented a danger to Jennie because he exhibits sexually inappropriate behavior and harbors animosity toward Jennie. Dr. Ziporyn did conclude that both parents were fit for custody of their daughter. He also stated that petitioner's defensive and protective attitude toward Randy would not offer adequate protection to Jennie. He added that this problem could be solved if Randy were permanently removed from the same home.

Randy testified that he lives with his uncle. He stated that he masturbates, but that he did not do this in front of other people. He also "whipped" his sister, Jennie, when they were just playing. He admitted that he once touched her between the legs. Randy also stated he easily gets nervous and upset and sometimes strikes people who call him names. He further stated that he loved Jennie and would not hurt her.

Testimony was presented by petitioner, respondent and respondent's brother, Charles, about instances of masturbation by Randy. Petitioner stated she did not know about it until the onset of dissolution proceedings. Respondent and his brother both testified to instances of finding Randy masturbating. Respondent's brother stated that he

found Randy masturbating while watching television and with his sister, Jennie, present in the room. Respondent testified that he had seen Randy masturbating with his hand in Jennie's vaginal opening.

Respondent also testified as to his health. He is overweight and suffers from hypertension and arthritis. Because of this, he limits his practice in podiatry, in which he and his brother Charles are engaged, to two days a week for several hours at a time. Petitioner testified that respondent normally awoke late in the morning and spent most of the day at a restaurant with his brother drinking coffee.

Petitioner contends the trial court erred in awarding custody of Jennie to respondent. She argues that the evidence shows she had a close, full-time, daily relationship with Jennie. It is further argued that respondent is not fit for custody because he is violent, foul-mouthed, in ill health and has not taken much interest in his daughter.

■ The primary and paramount consideration in a child custody case is the best interest and welfare of the child. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 365 N.E.2d 647.) Although the trial court has broad discretion when awarding custody of a child, it is not unlimited. (*Applegate v. Applegate* (1980), 80 Ill. App. 3d 81, 399 N.E.2d 330.) When the award of custody is contrary to the manifest weight of the evidence, it is the duty of a reviewing court to reverse the decision. *In re Marriage of Leopando* (1982), 106 Ill. App. 3d 444, 435 N.E.2d 1312, *aff'd* (1983), 96 Ill. 2d 114.

Petitioner relies heavily on *Leopando* for reversal. In *Leopando*, the ex-husband was granted custody of a four-year-old boy. On appeal, this court found the evidence overwhelmingly supported the mother's contention that she should have been awarded custody of the child. (106 Ill. App. 3d 444, 449.) Petitioner points out the factual similarities of the circumstances considered in *Leopando* and the present case. These include the daily, close relationship of mother and child, the irregular hours of the father and the hostility on the part of the father. Petitioner also assails the trial court's focus on the threat to Jennie by her 18-year-old autistic son, Jennie's half-brother Randy.

As mentioned above, the evidence presented by both parties was conflicting. The trial court found both parents were fit to have custody of Jennie. However, there was a very real concern over the behavior of Randy and the threat to Jennie's safety. Even though there was evidence that Randy had moved to an uncle's house, the trial court was further concerned about the permanency of this move, noting that petitioner was bound by dual feelings of loyalty and affection

for both children.

Petitioner argues that the court failed to give weight to the sex of the child and that of the custodial parent (*In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092) and to the health of the parties (*In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 415 N.E.2d 546). However, it is no longer presumed that the mother is necessarily the better custodian for young children. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.) The physical health of respondent is just one of many factors to be weighed by the trial court in determining the best interest and welfare of the child. (See Ill. Rev. Stat. 1981, ch. 40, par. 602(a)(5).) Evidence of respondent's health problems was before the court and argued by counsel. These factors are properly considered along with the interrelationship of the child with her siblings. Ill. Rev. Stat. 1981, ch. 40, par. 602(a)(3).

The trial court had the opportunity to observe the parties and the other witnesses and thus had a superior vantage point to assess and evaluate their temperaments and personalities. (*In re Marriage of Leopando; Comiskey v. Comiskey* (1977), 48 Ill. App. 3d 17, 366 N.E.2d 87.) We have reviewed the record and find that the decision of the trial court granting custody of Jennie to respondent, her father, is not contrary to the manifest weight of the evidence, nor does it constitute an abuse of discretion.

■ Respondent argues on cross-appeal that the amount of petitioner's attorney fees he was ordered to pay is excessive. It is well settled that the allowance of attorney fees rests within the sound discretion of the trial court and such an award will not be reversed unless the trial court has clearly abused its discretion. (*Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) It is also settled, however, that a court of review will not hesitate to reduce the fees awarded if they are unreasonably high. *Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.

We are well aware of the criteria to be considered in determining the award of attorney fees. (*E.g., In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) The petition for fees showed a specific number of hours, including 13 hours in court. It contained explanatory references indicating what was accomplished during the time referred to. No challenge was made at trial that inordinate and inflated time was reported in the petition for fees. All that appears in the record is a bare allegation that less time could have been spent on this matter. Petitioning counsel stated that the petition explained the

time expended on this case. Respondent makes no argument in this regard on appeal. It is argued, however, that no novel areas of family law were litigated. In his brief, respondent argues that the amount of fees was never demonstrated to be reasonable and necessary. In fact, the only argument appears to be that petitioner's counsel is not an "expert" in matrimonial law as certified by a matrimonial lawyers association.

The trial court properly applied its expertise and experience in this matter. (*Carvallo v. Carvallo* (1978), 62 Ill. App. 3d 394, 378 N.E.2d 1288.) Our examination of the record reveals that the award of fees was warranted and did not involve an abuse of discretion.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.