*In re* MARRIAGE OF GEORGE ELLIS MULLINS, Petitioner-Counterrespondent-Appellee and Cross-Appellant, and WINIFRED MULLINS, Respondent-Counterpetitioner-Appellant and Cross-Appellee.

Fourth District   No. 4—83—0400

Opinion filed January 11, 1984.

Jerome J. Bromiel and Richard L. Thies, both of Webber & Thies, P.C., of Urbana, for appellant.

John C. Hirschfeld, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of Champaign, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from an order of the circuit court of Champaign County which dissolved the marriage of the parties, established valuations for marital and nonmarital property and then divided such properties between the parties, and awarded the wife her attorney fees and costs and maintenance. The wife appeals the property division and the award of maintenance; the husband cross-appeals the award of the wife's attorney fees and costs. We affirm.

The dissolution was ordered upon the counterpetition of the wife; the court found that the children of the parties were of age and emancipated. Neither of these matters is disputed on appeal.

The trial court's order allocating property gives approximately 60% to the husband and 40% to the wife. Because of this division, the husband was ordered to pay certain marital debts. By subtracting these from his aliquot share, the division then becomes roughly equal. In her appeal the wife does not contest the 60/40 division as inequitable *per se*; she does maintain that the trial court abused its discretion in the valuation of certain assets, that the award of maintenance was inadequate, and that the calculation of the debts assigned to the husband was erroneous. She claims that by revaluing the assets and by correctly calculating the debts downward, the husband in fact received more than 60% and she received proportionately less.

Much of the valuation testimony was uncontroverted. A major controversy was over the valuation of the stock in Brown, Davis, Mullins and Associates (BDM), a consulting engineering firm, of which the husband is president and sole stockholder.

The fundamentals of division of marital property are well known. The reviewing court will not substitute its judgment for that of the trial court unless an abuse of discretion may be shown and such abuse exists only where no reasonable man could adopt the trial

court's position. (*In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 446 N.E.2d 559.) There is no requirement that a trial court place a precise figure on each item of property, but only that there be competent evidence of value and that the court's division be supported by that evidence. (*In re Marriage of Cuisance* (1983), 115 Ill. App. 3d 551, 450 N.E.2d 1302; *In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 445 N.E.2d 811.) It is a matter of common knowledge that the valuation of a closely held corporation, especially one dealing in services and largely dependent upon the personalities and abilities of its principals, is not an exact science. One need only to view the mountain of Federal tax litigation on the subject in order to come to this conclusion.

The wife maintains that the trial court did not receive adequate evidence of valuation of BDM shares. We disagree. The court heard evidence from the husband, BDM's accountant (Max Tarble), the other current principal participant in BDM (Jerry Ramshaw), and the secretary-treasurer of the corporation (Robert Ogden). This testimony revealed that a buy-sell agreement had been in effect among the three original shareholders of BDM, namely Brown, Davis, and husband. When Brown died in 1978, the agreement's formula was used to value his shares. Although no longer in effect after Brown's death, the agreement was also used as the basis for a valuation of Davis' shares when he retired in 1979. The trial court expressly stated in its opinion that it considered these valuations of BDM stock in the recent past in arriving at a corporate valuation. The court also heard testimony concerning the corporate profit-loss trend over the years, and the outlook at the time of the trial. The court considered the current financial statements of BDM. Further, the trial court considered evidence of BDM stock sale negotiations between husband and Ramshaw occurring from 1980 until the present divorce proceedings began.

■ Stock is generally valued at its market value. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) This is true even in the case of a closely held corporation providing that there is a market for the shares. Therefore, the negotiations between Ramshaw and husband are competent evidence of value. Similarly, stock valuations in the recent past are indicative of present value. In the present case the court was also aided by detailed documentary evidence concerning the present and historical financial status of BDM. The evidence was provided by persons intimately involved with BDM and was unrefuted. While only the husband's opinion as to the actual present value of the stock was presented, such specific opinion testimony should not be required. Evidence of arms-length valuations in

the recent past may be at least as helpful to the court. It appears then that this evidence would provide an ample basis upon which the court could arrive at a valuation for the BDM stock.

■ Of major significance, in our opinion, apart from the valuation testimony and exhibits introduced by the husband, is the failure of the wife to present any evidence at all on the question of the valuation of the BDM stock. We acknowledge that there is a line of authority holding that a litigant need not present evidence of value of marital assets at trial in order to raise the issue on appeal. (*In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 449 N.E.2d 919.) Other recent cases have questioned the principle. In *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54-55, 448 N.E.2d 545, 550, the court said:

"We again emphasize that it is the parties' obligation to present the court with sufficient evidence of the value of the property. Reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. (*In re Marriage of Miller* (1983), 112 Ill. App. 3d 203, 209; see *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 341, 417 N.E.2d 220, 223.) Remanding cases such as the one before us would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing. As the trial court here said after numerous hearings in this case, at some point we must 'ring the curtain down.' "

(Accord *In re Marriage of McCartney* (1983), 116 Ill. App. 3d 512, 452 N.E.2d 114.) We, too, express our agreement with the *Smith* and *McCartney* courts.

■ In sum, the trial court had before it a plethora of testimony and exhibits on valuation of the stock, all provided by the husband, and nothing from the wife. Its valuation was well within the range of the evidence. There was no abuse of discretion, and we find no basis upon which to gainsay its finding.

The wife's next contention is that the trial court erred in assigning a zero valuation to certain limited partnerships which the husband had purchased as tax shelters. At trial the husband testified that he had very little knowledge of the investments; that two of them obliged him to invest an additional $40,000 and $34,000 respectively; that they could not be assigned without consent of the general partner; and that any assignee must be in a 50% tax bracket and have a net worth of $100,000. To assist the court, the husband presented a

prospectus from each entity. These stated, among other things, that each investor should be prepared to lose his entire investment and to expect little liquidity.

■■ As in the case of the BDM stock, the wife failed to introduce any countervailing evidence as to the valuation of the limited partnerships. In the light of the husband's evidence, the court's valuation of zero does not appear unreasonable. It might well have considered the interests a liability. There was no abuse of discretion and hence no basis for our intervention.

■■ The wife's next complaint concerns the husband's nonmarital farm land. It is beyond dispute that in making a property division a trial court must take into consideration the value of nonmarital property set apart to each spouse. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(2).) The wife argues that there was no evidence of valuation of the husband's farm land before the court. The record is otherwise. Unlike the cases of the BDM stock and the tax shelters, the wife herself introduced such evidence. She presented the husband's financial statement for 1981 showing a value of the farm at $180,000; also, in her affidavit in support of her motion for temporary relief she stated the value of the farm to be $190,000.

The confusion apparently arises from the trial court's temporary *lapsis memoriae*. In his written memorandum of judgment he stated that no evidence had been received as to the value of the farm. However, he went on to say that "it may not be ignored in the final allocation." The implication of the latter is that the court was aware of some value. With the great mass of evidence, testimonial and demonstrative, before him, it is understandable that the court might overlook temporarily an item or two in preparing his written judgment.

In any event, the wife cannot be heard to complain about evidence which she herself introduced into the record.

Finally, in the area of valuations, the wife maintains that the trial court incorrectly calculated certain debts which were assigned to the husband. The total amount of these debts was $71,000; the wife does not contest $17,000 of these; she does contest $40,000 which the husband purportedly owes to BDM, and $14,000 borrowed against the husband's life insurance policies.

■■ As to the $40,000 debt to the corporation, this arose out of the testimony of Ogden, BDM's secretary-treasurer, who, while reading from the corporate balance sheet for July 31, 1982, stated that the corporation had borrowed $41,471.61 from the husband; immediately prior thereto, he had testified that the husband had borrowed $40,000 from the corporation but was uncertain as to whether he pos-

sessed any evidence of such debt.

In discussing the BDM debt, the trial court stated:

> "Respondent argues that there is some offset to the debt of the corporation as a result of a debt of the corporation to petitioner. The evidence was insufficient to establish the extent of this, if any. In any event, the Court rules that the petitioner shall be obligated for the payment of these debts and shall hold respondent harmless from liability for same."

The trial court found the evidence of offset insufficient, a conclusion with which we agree. It is also significant that the court assigned the debt "in any event." We interpret this to mean that the debt is assigned regardless of its exact amount.

■ As to the insurance policies, the record is clear that the husband possessed four policies with a total cash surrender value of about $14,000; it is also clear that he had borrowed against the policies to the full extent of that value. In its allocation the trial court assigned zero value to the policies as an asset and further assigned the $14,000 to the husband as a liability. The wife appears to argue that they should have been valued at $14,000 as an asset with a corresponding liability in the same amount, thus canceling each other out. We fail to understand the argument. The present value, as distinguished from the face value, of an insurance policy is its cash surrender value. In the instant case that is nil; if the policies were surrendered, the borrowing would be deducted from the payment. If the policies were not surrendered, the debt must be paid; it is a present obligation, notwithstanding it might continue until the face value of the policies becomes payable; *i.e.,* upon the death of the husband or his outliving the mortality tables. The record contains no indication of any intent on the part of the husband to surrender the policies now. The trial court's assessment was proper.

In summary, we find no abuse of discretion in the valuation of the parties' property.

We turn next to the award of maintenance which the wife claims is inadequate and will compel her to deplete some of the marital property assigned to her.

The record demonstrated that the wife was a registered nurse and had worked in this profession part-time during the years 1978-1980. However, she had temporarily abandoned her remunerative work to care for her aged and ailing father. This care required her services approximately six hours per day, seven days per week. She received no monetary compensation for this, but her father furnishes most of her food and gasoline for her automobile.

The trial court awarded her $750 per month maintenance until such time as she is no longer required to care for her father. At that time the award is to be reviewed. The trial court stated that this amount, together with her share of the husband's pension plus interest from her nonmarital investments, would be sufficient to maintain her in an appropriate life style.

The record indicates that the trial court carefully considered each of the factors set forth in section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)) before making the award. Although the wife may weigh these factors differently, we cannot say that the court abused its discretion. The total available to the wife based on the court's calculations is about $1,500 per month, a sum which we consider reasonable.

■■ The wife further argues that the court's order will compel her to deplete a marital asset, viz., her share of the husband's pension. The argument misapprehends the nature of a pension. It is specifically intended for living expenses. Theoretically, if the pension were large enough, there would be no need for maintenance. As was said in In re Marriage of Aschwanden (1980), 82 Ill. 2d 31, 38, 411 N.E.2d 238, 242:

> "Where the property available to the defendant spouse is sufficient to satisfy that spouse's needs and entitlements, the use of maintenance should be limited. [Citation.] Thus, if sufficient marital property is found, an award of maintenance may be unnecessary."

We find no abuse of discretion in the trial court's award.

■■ We turn finally to the husband's cross-appeal from the award of attorney fees and costs to the wife. He acknowledges that the fees requested are reasonable. However, he argues that the wife has the ability to pay them; that she should be compensated for the care of her father, or in the alternative, she should abandon him and seek compensated nursing work. We find such an attitude considerably lacking in compassion. The services which she is performing are generally gratuitous and done out of a sense of filial piety, honored and commended since the time of Aeneas and Anchises. We know of no rule of law which requires a child to abandon a parent in order that a former spouse may save a few dollars.

The order of the circuit court of Champaign County is affirmed.

Affirmed.

TRAPP and MILLER, JJ., concur.