*In re* MARRIAGE OF RUTH ANN HOLDER, Petitioner-Appellant, and JO-
SEPH HOLDER, Respondent-Appellee.

Fifth District   No. 5—83—0739

Opinion filed October 8, 1985.

Callahan & Moran, of Trenton (Kathleen Moran, of counsel), for appellant.

Hohlt, House, DeMoss & Johnson, of Pinckneyville (Rogert H. Seibert, of counsel), for appellee.

JUSTICE KARNS delivered the opinion of the court:

The marriage of petitioner, Ruth Holder, and respondent, Joseph Holder, was dissolved in a bifurcated proceeding, the final judgment awarding property and custody of the two minor children being entered on July 18, 1983. On appeal petitioner questions only the distribution of property and the award of custody of the parties' two sons to respondent.

The property involved consists of seven parcels of modular and mobile home rental property (collectively referred to as Holder Rentals), various items of personal property, and Mobile Structures, Inc., an office trailer and room addition manufacturing business owned solely by respondent. The original site of Mobile Structures, Inc.'s, business was leased to Contempri Homes, Inc., a subsidiary of Mark IV Industries. Although Mobile Structures, Inc., did not cease as a corporate entity, all equipment and inventory was sold to Mark IV Industries, which also continued to employ Mobile Structures, Inc., employees. Mobile Structures, Inc., was subsequently rebuilt at another location.

Both parties presented extensive testimony from qualified appraisers as to the value of all property. On the basis of the sale of Mobile Structures, Inc.'s, assets to Mark IV Industries, respondent testified that Mobile Structures, Inc., did not possess an asset of goodwill. Petitioner presented no estimated value of goodwill at trial. While both parties agree that petitioner worked at Holder Rentals and Mobile Structures, Inc., during the course of the marriage, conflict exists as to the number of hours she was employed and the amount of direct compensation she received.

The trial court found all real property to be marital and placed an equity value on each parcel. Petitioner was awarded the marital home with an equity of $133,000 and two parcels of rental property valued together at $52,000. Respondent was awarded Mobile Structures, Inc., valued by the court at $123,700, and five parcels of rental property valued at $109,800. Respondent was ordered to pay petitioner maintenance of $540 per month for two years and to make three mortgage payments on the marital residence on petitioner's behalf. In addition, respondent was awarded custody of the parties' two sons and was ordered to maintain life insurance in the amount of $25,000 per child. Petitioner was granted liberal visitation rights.

On October 11, 1983, a hearing was held wherein petitioner's post-trial motion to reopen the hearings to present evidence of the value of goodwill of Mobile Structures, Inc., was denied. On October 29, 1983, the building leased by Mobile Structures, Inc., to Contempri Homes, Inc., burned to the ground. Petitioner filed notice of appeal on November 4, 1983. At a hearing held on March 15, 1984, pursuant to petitioner's motion to stay the sale of Mobile Structures, Inc.'s, building and land, respondent testified that Mobile Structures, Inc., received $193,700 in insurance proceeds and that a sale of Mobile Structures, Inc.'s, land and building for the amount of $107,000 was pending between that corporation and Contempri Homes, Inc. Petitioner's motion to stay the sale was denied, but respondent was ordered to place $90,000 in escrow upon completion of the sale pending the outcome of this appeal.

Petitioner raises five issues on appeal: first, whether the trial court erred in awarding custody of the parties' two children to respondent; second, whether this court should take judicial notice of the change in value of the building leased to Contempri Homes, Inc., as established by the proceeds of the insurance policy and the value of Mobile Structures, Inc.'s, building and land as fixed by the sales agreement, both of which exceeded the values placed on the property at trial; third, whether the trial court erred in denying petitioner's

post-trial motion requesting the opportunity to present evidence of the value of goodwill; fourth, whether the trial court abused its discretion in its division of property; and fifth, whether the court erred in denying petitioner's request for attorney fees.

Initially, petitioner contends that the trial court erred in awarding custody of the parties' two sons, ages 9 and 11 at the time of trial, to respondent.

■ The best interest of the child is the primary concern in determining custody of minor children. (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88, *cert. denied* (1983), 464 U.S. 895, 78 L. Ed. 2d 232, 104 S. Ct. 242; *In re Marriage of Benevento* (1983), 118 Ill. App. 3d 16, 454 N.E.2d 766.) The Illinois Marriage and Dissolution of Marriage Act sets forth relevant factors to be considered in determining custody in accordance with the best interest of the child. (Ill. Rev. Stat. 1983, ch. 40, par. 602.) The trial court had ample evidence before it to which these factors could be applied in making its custody determination. Witnesses called on petitioner's behalf stated that respondent had a close relationship with the children and described their relationship as very good, whereas petitioner's relationship was described as fairly good. Respondent was described as an excellent father who spent quality time with his children. While neither parent was deemed unfit, it is not necessary to find one parent unfit in order to justify an award to the other parent. (*In re Marriage of Macaluso* (1982), 110 Ill. App. 3d 838, 843, 443 N.E.2d 1, 4.) The record reveals that petitioner incurred problems dealing with the children when they were younger, and babysitters were frequently employed to help care for the children. Petitioner consulted a psychiatrist for what she described as marital problems and was prescribed tranquilizers and antidepressants.

Testimony was given concerning the availability of each parent to the children should he or she be awarded custody. Petitioner stated that she intended to continue her education on a part-time basis. Respondent stated that he intended to continue working full-time but that he would make time to spend with the boys as he had in the past. Friends and neighbors of respondent, who had known the children for years, testified that they would be available to assist the respondent. When the children were interviewed in chambers, neither expressed a preference as to which parent they chose to live with.

■ Because the trial court is in a unique position to observe the demeanor and assess the credibility of witnesses, that court's decision will be reversed only if it is contrary to the manifest weight of the evidence or constitutes an abuse of discretion. (*In re Marriage of Mi-*

*lovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811; *In re Marriage of Ramer* (1980), 84 Ill. App. 3d 213, 405 N.E.2d 401.) The record indicates that the trial court took into consideration all relevant factors in determining that the best interests of the children would be served by awarding custody to respondent.

The second issue raised by petitioner is whether this court should take judicial notice of the change in the value of Mobile Structures, Inc.'s, assets, as established by the insurance proceeds and sales agreement, as a basis for modifying the distribution of property.

On March 15, 1984, at a hearing held pursuant to petitioner's motion to stay, respondent disclosed that Mobile Structures, Inc., had received $193,700 in insurance proceeds as a result of a fire on October 29, 1983, which destroyed the building leased to Contempri Homes, Inc. Contempri Homes, Inc., and Mobile Structures, Inc., reached an agreement whereby Contempri agreed to purchase Mobile's building and land for $107,000 ($17,000 down and the balance of $90,000 due one year from the date of sale). Petitioner's motion to stay was denied, but respondent was ordered to place $90,000 in escrow pending the outcome of this appeal.

Petitioner contends that the discrepancy between the values assigned by the trial court to the Mobile Structures, Inc.'s, and Contempri Homes, Inc.'s, buildings and land, $75,000 and $87,000, respectively, and the amounts realized from the insurance proceeds and sales agreement, is evidence that the property was grossly undervalued. Petitioner argues that this court should take judicial notice of the amounts received from the insurance proceeds and sales agreement as representing the correct value of these assets and modify the property distribution accordingly.

■■ ■ This appeal was perfected on November 4, 1983, when notice of appeal was filed. (87 Ill. 2d R. 303.) It is well established that courts of review can consider only those matters existing in the record at the time notice of appeal was filed. (*In re Interest of J.A.G.* (1983), 113 Ill. App. 3d 140, 446 N.E.2d 868; *Bradley v. Gallagher* (1973), 14 Ill. App. 3d 652, 303 N.E.2d 251.) Petitioner asserts that evidence of the amounts received from the insurance proceeds and sales agreement are properly part of this record because these facts were presented upon petitioner's motion to stay, or alternatively, because the event which led to these matters, namely the fire, occurred before notice of appeal was filed. The hearing on petitioner's motion to stay was held approximately four months after notice of appeal was filed. Actions of the trial court subsequent to the filing of notice of appeal are not cognizable by this court. (*Shapiro v. DiGuilio*

(1968), 95 Ill. App. 2d 184, 189, 237 N.E.2d 771, 774.) This appeal must be resolved from the standpoint of the record as it exists at the time the notice of appeal was filed, and the mere happenstance of an event before notice of appeal was filed, but long after judgment of dissolution was entered, does not alter our decision that these matters are not properly part of the record on appeal.

Petitioner attempts to circumvent this rule by contending that this court should take judicial notice of the amounts received by Mobile Structures, Inc., and modify the property distribution accordingly. Judicial notice may be taken of facts not in the record. (*Rural Electric Convenience Cooperative Co. v. Illinois Commerce Com.* (1983), 118 Ill. App. 3d 647, 454 N.E.2d 1200.) To say that a court will take judicial notice of a fact is merely another way of saying that the usual forms of evidence will be dispensed with if the fact is one which is commonly known or readily verifiable from sources of indisputable accuracy. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085, 1090; *222 East Chestnut Street Corp. v. Board of Appeals* (1958), 14 Ill. 2d 190, 193, 152 N.E.2d 465, 467.

■ Petitioner's reliance upon case law which has espoused taking judicial notice of facts not in the record which render an issue moot on appeal is misplaced. These decisions rest upon the basic principle that the existence of a real controversy is the essence of appellate review. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486.) This principle cannot be relied upon to expand the scope of review by taking judicial notice of matters which were highly disputed at trial and not properly part of the record on appeal. While judicial notice has been taken of periods of inflation or deflation (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 226, 446 N.E.2d 499, 507), the well-defined rule is that courts refrain from taking judicial notice of the value of specific realty due to the many factors affecting its value. *222 East Chestnut Street Corp. v. Board of Appeals* (1958), 14 Ill. 2d 190, 194, 152 N.E.2d 465, 467; *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 150, 396 N.E.2d 1192, 1196.

■ Furthermore, we do not believe it would be proper to take judicial notice of the amounts received by the insurance proceeds and sales agreement and conclusively presume that these amounts represent the accurate fair market value of the property, both amounts being beyond the range of all expert testimony. The facts in question are not matters of common knowledge, and while the monetary amounts received are readily verifiable, their significance in determining the fair market value of the property at the time of dissolution (*In re Marriage of Frazier* (1984), 125 Ill. App. 3d 473, 476-77, 466

N.E.2d 290, 293) is not of such a nature to meet the requirements of judicial notice. Respondent's motion to strike all portions of the record and petitioner's brief referring to matters arising subsequent to the perfection of this appeal is granted.

■■ Petitioner contends that the trial court erred in denying her post-trial motion to reopen the case to present evidence of the value of goodwill of Mobile Structures, Inc. The decision to allow a case to be reopened for the introduction of further evidence rests in the sound discretion of the trial court, and this court will not interfere except where that discretion was abused and the failure to reopen resulted in injustice. *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545.

Qualified appraisers testified as to the fair market value of Mobile Structures, Inc., as did respondent. Respondent expressed the opinion that goodwill was not an asset of Mobile Structures, Inc., due to the sale of substantially all its assets and transfer of employees to Contempri Homes, Inc., and because Mobile Structures, Inc., was a one-man operation. Petitioner failed to introduce any evidence as to the value of goodwill.

■■■ While goodwill is a factor to be considered in valuing a corporation (*In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 443 N.E.2d 31; *In re Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421), it is not essential that the trial court place a precise figure on each asset, but only that competent evidence of value exists and that the court's decision is supported by that evidence. (*In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 89, 458 N.E.2d 1360, 1362.) The trial court had extensive evidence before it of the value of Mobile Structures, Inc. This court has recognized that it is the parties' obligation to present evidence of the value of property and has adopted the view that reviewing courts cannot continue to reverse and remand dissolution cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. (*In re Marriage of Schaufelberger* (1983), 120 Ill. App. 3d 114, 457 N.E.2d 993; *In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 448 N.E.2d 545.) Petitioner has failed to show due diligence in presenting the evidence at the time of trial or demonstrate that she has suffered an injustice by the failure to reopen the evidence. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) The trial court's denial of petitioner's post-trial motion was not an abuse of discretion.

■■ Petitioner also contends that the trial court erred in relying on respondent's valuation of marital assets rather than either appraiser's valuation. Petitioner failed to object to respondent's testimony at

trial and has, therefore, waived the error on appeal. *Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 470 N.E.2d 1163.

■■ Petitioner's final contention as to the valuation of assets is that while the trial court made a finding of value for each parcel of property, there is no basis in the record for the values placed on several parcels. Given petitioner's failure to specify which parcels were improperly valued, we need only state that the trial court had before it an abundance of credible testimony upon which it could assess the value of the property and that the trial court's valuation was well within the range of evidence. *In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 90, 458 N.E.2d 1360, 1363.

The fourth issue raised by petitioner is whether the trial court erred in failing to equitably divide the property. Petitioner claims that the distribution is inequitable because the property she was awarded is non-income-producing. Petitioner was awarded the marital home and two parcels of rental property with a total equity value of $185,000. Respondent was awarded Mobile Structures, Inc., and all of its assets and five parcels of rental property with a total equity value of $233,500. In addition, respondent was ordered to pay petitioner maintenance in the amount of $540 per month for 24 months and to make mortgage payments for three months on the marital home on petitioner's behalf. Respondent was awarded custody of the two children and is responsible for maintaining life insurance for the benefit of the children at a minimum of $25,000 per child. Much of the parties' property was subject to debt, and respondent testified that the income-producing properties supported the indebtedness of other less lucrative parcels.

■■ An equitable division of property is not necessarily an equal distribution. (*In re Marriage of Caldwell* (1984), 124 Ill. App. 3d 898, 465 N.E.2d 523; *In re Marriage of Shafer* (1984), 122 Ill. App. 3d 991, 462 N.E.2d 39.) The objective is to compensate each party for his or her contribution during the marriage. (*In re marriage of Goforth* (1984), 121 Ill. App. 3d 673, 459 N.E.2d 1374.) While the parties disagreed about the amount of time and effort petitioner put into the rental business and Mobile Structures, Inc., neither party disputed the fact that respondent was primarily responsible for the management of both businesses. The trial court was apprised of the interrelatedness of the rental properties and of the parties' respective business skills. One parcel of property awarded to petitioner was not subject to any debt. Should petitioner decide that the property awarded to her is not beneficial as rental property, she is free to sell the property and utilize the proceeds as she sees fit. We note that petitioner's claim that

the value of her property is impaired by respondent's right of first refusal is moot in light of the fact that this right expired as of July 18, 1985. While the court declined to order a judicial sale of the marital home, petitioner is free to dispose of that asset, also.

■■ The record reflects that the trial court considered the relevant factors of the value of the parties' property, the duration of the marriage, age of the parties, the custody award, and the parties' relative contributions and future earning potential. Petitioner stated that she intended to receive her nursing degree within two to three years. Given the award of custody of the children to the respondent, parental duties will not prevent petitioner from obtaining employment. We find that the trial court did not abuse its discretion in distributing the property involved. *In re Marriage of Brown* (1984), 127 Ill. App. 3d 831, 469 N.E.2d 612.

■■ The final issue raised by petitioner is that the trial court erred in denying her request for attorney fees. (Ill. Rev. Stat. 1983, ch. 40, par. 508.) The primary obligation to pay attorney fees rests with the party for whom the services are rendered. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 276, 411 N.E.2d 947, 949.) For petitioner to justify an award of attorney fees she must establish that she is unable to pay those fees and that respondent is able to do so. *In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 683, 459 N.E.2d 1374, 1382.

■■ Petitioner's attorney fees amounted to approximately $14,000. While respondent was awarded a greater share of the rental property and all of Mobile Structures, Inc., these properties were subject to outstanding debts. The record does not reveal that respondent is in any better position to pay petitioner's attorney fees than petitioner herself. Just as this court has refused to upset the balance achieved by the trial court in determining the division of property by reversing an award of attorney fees (*Simmons v. Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321), we decline to do so here by awarding petitioner attorney fees absent an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Perry County is affirmed.

Affirmed.

WELCH and KASSERMAN, JJ., concur.