*In re* MARRIAGE OF CLARETTE E. KRIEGSMAN, Petitioner-Appellee, and STEVEN A. KRIEGSMAN, Respondent-Appellee (Pedersen and Houpt, P.C., Appellant).

First District (4th Division)   Nos. 1—89—3348, 1—90—2049 cons.

Opinion filed August 29, 1991.

Pedersen & Houpt, P.C., of Chicago (Marc D. Janser and Cynthia L. Meltzer, of counsel), appellant *pro se*.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Howard A. London, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Pursuant to a judgment of dissolution of marriage, the trial court awarded custody of the minor child to the father, Steven Kriegsman, divided the parties' property, and awarded attorney fees. The mother, Clarette Kriegsman, fled the jurisdiction with the child during the proceedings and has remained hidden ever since. Her attorneys, Pedersen & Houpt, P.C., continued to represent her in her absence. Although the trial court awarded Pedersen & Houpt substantial attorney fees for its services, to be collected from its own client, Clarette, the firm appeals on the ground that all property awarded to her was put into a trust fund and made available for other uses, which had the effect of nullifying the fee award.

We affirm.

BACKGROUND

Clarette Kriegsman filed a petition for dissolution of marriage in May 1987. The ensuing litigation was bitter and protracted. In October of 1988 Clarette fled the jurisdiction with the parties' toddler, Falcon, and she remains at large. Thereafter, she was held in contempt of court. Steven Kriegsman, who had maintained close and frequent contact with his son, has undertaken a massive search for his son at substantial expense.

Trial proceeded in Clarette's absence, and the court heard evidence regarding the parties' assets. Clarette was awarded one-half of the parties' cooperative apartment, which Steven could purchase from her for $65,000; stocks in her possession or control at the time she left, valued at $72,000; personal property held by her or her father including jewelry, sculpture, and bank accounts; and her car. She also was found to have a nonmarital interest in Loop Limited Partnership, the value of which was shown to be between $13,271 and $30,752. Steven was awarded his business, valued at $50,000, and his one-half interest in the parties' cooperative apartment, as well as his personal property and paintings, plus his car.

In the judgment of dissolution, the trial court impressed a trust upon Clarette's interest in the cooperative apartment and the stock pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(g)). The trust was intended to facilitate Falcon's return to Illinois, at which time any assets remaining in the trust would be available for the payment of the attorney fees. Pedersen & Houpt appeals from this and other findings in the trial court's judgment of dissolution (appeal No. 1—89—3348).

Several months after the judgment of dissolution was entered, Steven petitioned the court to credit the money he had spent searching for Falcon against the money he owed Clarette for her share of the marital residence (held in the section 503(g) trust). Since the trial court had set up the trust for the best interests of the child, and returning him to his father's custody in Illinois furthered that interest, the trial court granted Steven the requested relief. The court-appointed trustee reviewed Steven's evidence of payment, and the court held an *in camera* hearing on the prove up of Steve's claimed expenses. At Steven's request, his ex-wife's attorneys were barred from the hearing because of his fear that the proof of his search for Falcon might reveal information that could help Clarette continue to elude Steven's investigators. Pedersen &

Houpt believes that its fee award was rendered illusory by the $65,000 in credits given to Steven; accordingly, it also appeals from the trial court's rulings in the post-judgment matter (appeal No. 1—90—2049).

In the judgment for dissolution of marriage, the trial court awarded Pedersen & Houpt all of the fees and costs it had requested, totalling $62,467.50 in fees and $5,096.03 in costs. The court further ruled that its client, Clarette, was the party solely responsible for payment of the fees to Pedersen & Houpt. Moreover, the court assessed her $11,000 of the fees Steven incurred in defending against matters that were directly triggered by her leaving, including the attempt of Clarette's parents, Patricia and Al Frank, to intervene in the litigation and obtain legal custody of their grandson. The trial court expressly held that none of Clarette's attorney fees were to be paid by Steven.

OPINION

Pedersen & Houpt represents its own interests in these consolidated appeals. Consequently, none of the trial court's findings are in issue except those that bear directly on the payment of Pedersen & Houpt's attorney fees. The law firm does not, and cannot, contest the fairness of the property division itself, since it appears the court roughly split the parties' assets. Nor does the law firm argue that the court awarded Clarette insufficient assets from which its fees could be paid. Rather, the firm claims that she was not shown to have any income and that Steven should have been ordered to pay its fees because he has the financial resources to pay. The firm also argues that the court in effect nullified the fee award by impressing the property awarded to Clarette with a trust and then allowing the trust property to be diminished or depleted by Steven's claims for reimbursements of money he spent searching for Falcon. Finally, Pedersen & Houpt challenges the trial court's decision to allow Steven to prove his expenditures in a closed, *in camera* session from which the firm was barred on the grounds that Steven did not wish his ex-wife's attorneys to learn the steps his private investigators had taken to locate the child.

STANDING

Steven challenges the entire appeal on the grounds that Pedersen & Houpt lacks standing to appeal from the trial court's allocation of fees or from the creation, funding, and distribution of the trust. Although he acknowledges that an attorney is given standing

to obtain a fee award in his own name under section 508(c) of the Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 508(c)), Steven claims that the law firm has no right of appeal from the allocation of fees between the parties or to contest the creation and use of a section 503(g) trust, which permits property to be placed in trust for the benefit of the child.

■ Section 508 of the Act provides a mechanism whereby a party to the proceedings may be awarded attorney fees from the other spouse under certain conditions. Subsection (c) states as follows:

"(c) The court may order that the award of attorney's fees and costs hereunder shall be paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party. Judgment may be entered and enforcement thereof had accordingly." Ill. Rev. Stat. 1989, ch. 40, par. 508(c).

■ Section 508 creates an economic incentive to attorneys who otherwise may decline to represent a spouse with meager financial resources. By allowing fees to be awarded as part of the divorce proceedings, either on an interim basis or at the end, this section provides an exception to the general situation in which a lawyer must sue his client for unpaid bills and enforce the judgment in supplemental proceedings. Subsection (c) allows an attorney as the real party in interest in a fee petition to obtain the fee award in his own name.

■ While we believe that attorneys have sufficient interest in their fee awards to satisfy the basic concept of standing (a personal stake in the outcome of matters affecting the fee award), we also believe that the divorce attorney as *creditor* is not on firm footing when challenging the trial court's division and distribution of the parties' assets. In the pending case, the client, Clarette, would normally be the one to contest the property distribution as it related to her ability or lack of ability to pay her attorneys. She chose to forgo that right by violating the court's orders and absconding with the child, leaving her former husband, her parents, assorted lawyers, and the courts to deal with the litigation she initiated and then abandoned. Because she is the proper party to contest or challenge the court's substantive rulings, Pedersen & Houpt is in the difficult position of asserting rights that are actually derivative of hers. Because we cannot consider the merits of the lawyers' claims without recognizing their general standing, however, we choose to

relax strict application of the judge-made doctrine of standing in this context.

## I. APPEAL NO. 1–89–3348

According to Pedersen & Houpt, the trial court failed to adhere to the law when it held Clarette instead of Steven responsible to pay the fees incurred on her behalf. In relevant part, section 508(a) of the Act provides that the court, "after due notice and hearing, and after *considering the financial resources* of the parties, *may* order either spouse to pay a reasonable amount for his own costs and attorney's fees *and for the costs and attorney's fees necessarily incurred* or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred *by the other spouse.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 40, par. 508(a).

Although this language does not *require* the court to award fees against the other spouse, Pedersen & Houpt argues that the trial court abused its discretion in assessing fees against Clarette in light of her inability to pay and Steven's ability to pay. See, *e.g., Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56 (court should consider relative financial stability of each party, distribution of property, and the financial inability or ability of a spouse to pay).

The law firm contends that Clarette lost her ability to pay when the court directed most of her property award into the trust for the benefit of Falcon. Pedersen & Houpt states that the record shows that Clarette had little income and received no maintenance. Further, the firm claims that the $72,000 in stock was never proved to be in existence at the time of trial or when the judgment was entered.

On the latter point, we can only conclude that Steven is not the party required to prove the whereabouts of stock in Clarette's possession and control at the time she fled. (See *Shumak v. Shumak* (1975), 30 Ill. App. 3d 188, 332 N.E.2d 177.) Nor is the trial court hamstrung by a lack of evidence caused by an absent spouse.

■ The record contains evidence that Clarette had, in addition to the stock, a nonmarital, limited partnership interest worth between $13,271 and $30,752. Moreover, Clarette's access to other sources of funds has been demonstrated by her apparent ability to support herself and the child during travels that have spanned the globe. In any event, absent Clarette's testimony as to her financial condition at the time of the hearing on the fee petition, the court could not merely speculate that she had no income or assets availa-

ble. Accordingly, the court viewed the evidence of record, including her substantial amount of stock, and determined that Clarette's attorneys failed to show that she was unable to pay her own attorney fees.

■ The trial court was correct. The party requesting relief has the burden of proof, and there is no presumption that a wife is unable to pay her own fees. (*In re Marriage of Meyer* (1986), 140 Ill. App. 3d 1031, 1036, 489 N.E.2d 906.) Accordingly, because any right of Clarette's lawyers to tap Steven for their fees derives from their own client's inability to pay, they had the burden of establishing that she lacked the resources. (See *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.) Deficiencies of proof as to her financial condition, therefore, are attributable to them and provide no reason to reverse the trial court. It would be manifestly unjust to pick Steven's pocket simply because he stayed within the court's jurisdiction. We note in passing that attorneys who represent a fugitive client and incur $40,000 in fees on top of a preflight balance of $22,000 might be viewed as assuming the risk of noncollection.

■ On the issue of *Steven's* ability to pay, moreover, Pedersen & Houpt cannot focus exclusively on his potential income and property without considering his basic living expenses. He has also expended significant sums in the effort to retrieve his child. The sole evidence Pedersen & Houpt cites in support of his ability to pay their fees is the fact he was awarded Vintage Vinyl, his business valued at $50,000; one-half of the parties' apartment ($65,000); and "use of the 503(g) trust." It is unclear whether the lawyers would have him liquidate his business and residence to pay the fees generated by their client. In any event, they fail to set forth sufficient facts in their brief to show that Steven was financially able to pay their fees. In fact, the record indicates he owed his own lawyers a balance of $37,000 due on a bill of $62,880. Therefore, unless they could prove that Steven's payment of $67,000 to them would not deplete his assets and undermine his economic stability, Pedersen & Houpt cannot seriously claim he has the financial ability to pay it. See *In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 511 N.E.2d 1157, *appeal denied* (1987), 116 Ill. 2d 556, 515 N.E.2d 1220; *In re Marriage of Holder* (1985), 137 Ill. App. 3d 596, 605, 484 N.E.2d 485 (where husband was in no better position than wife to pay her fees, parties were properly required to pay their own).

■ Pedersen & Houpt also terms as "punitive" the court's refusal to require Steven to pay Clarette's fees. The firm argues that

the court improperly punished Pedersen & Houpt for its client's "alleged contempt."

This argument borders on the frivolous. The trial court was not punishing Clarette by holding her responsible for her own attorney fees. On the issue of the parties' relative financial ability, the court concluded that the law firm failed to carry the burden of persuasion; therefore, the court refused to shift the liability for the fees to Steven. The court was not blaming Pedersen & Houpt for Clarette's conduct and in fact complimented the firm on the level of representation it had provided. If the law firm wishes to assess blame for a potentially uncollectible judgment, it cannot lay the charge before the trial court. While Pedersen & Houpt's appeal does not directly involve Clarette's conduct, one of the natural consequences of her flight is the hardship imposed on her attorneys. While they may lose money, others have suffered immeasurable losses caused by her flagrantly immature, arrogant conduct: Steven has lost his young son. Falcon has lost his father, grandparents, friends, school, and home. His mother is a fugitive from justice.

The record demonstrates that the trial court did not punish Clarette with respect to property division, attorney fees, or any other matter. On the contrary, the trial court's evenhandedness throughout the protracted proceedings is to be commended. Clarette's attorneys cannot overcome the fact that it is their client's absence, not her financial status, that has created their current collection difficulties. We conclude that the trial court acted well within its discretion in finding that Steven was not responsible for Clarette's attorney fees.

Pedersen & Houpt next claims that even assuming the court was correct in taxing the fees to Clarette, the court abused its discretion and rendered its fee award illusory by placing most of Clarette's assets into the section 503(g) trust. Under the terms of the court's judgment, the trust property could not be used to satisfy the fee award until Falcon is returned to the jurisdiction. The law firm contends that the trial court could have divided the property in some other way, such as awarding one parcel of assets to Steven, one to Clarette, and one to the trust. Presumably, the firm could then attach the property awarded to Clarette.

■ Section 503(g) of the Act permits the trial court to "set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties" if the court deems it "necessary to

protect and promote the best interests of the children." (Ill. Rev. Stat. 1989, ch. 40, par. 503(g).) Pedersen & Houpt does not challenge the basic authority of the court to establish the trust in this case. The trial judge entered a finding in the judgment of dissolution to the effect that "[Clarette's] absenting herself with the minor child from the jurisdiction of this Court could present no more compelling case for the imposition of a trust pursuant to Section 503(g) for the benefit of the minor, and in particular, to secure the prompt and safe return of the child to this jurisdiction."

■ The lawyers' interest in the trust assets is obviously linked to their ability to collect their fees. The trial court had found that the firm's fees were reasonable and necessary and accordingly awarded judgment. The Act does not require the court to impress an attorney's lien on any specific property, however, or to give priority to collection of fee awards over the needs of a child whose welfare may depend on the trust assets being made available to the custodial parent. We therefore conclude that Pedersen & Houpt fails to set forth valid grounds upon which to attack the trial court's imposition of a trust on Clarette's property.

We are not denigrating the firm's desire to collect its judgment, but the trial court is not to be blamed for declining to put the firm's convenience in collecting its fees ahead of the interests of the child who was wrongfully taken from the jurisdiction. We hold that the trial court acted well within its discretion.

### II. APPEAL NO. 1—90—2049

VALIDITY OF POST-JUDGMENT ORDER PERMITTING STEVEN TO RECEIVE CREDITS AGAINST TRUST PROPERTY

Approximately six months after the trial court entered the judgment for dissolution of marriage, Steven petitioned the court for a "determination of credits" thereunder. According to the petition, Steven had spent or incurred liability for substantial amounts of money in attempting to locate his son. While he had paid some of this money during the dissolution proceedings, he did not seek credits or reimbursements from the section 503(g) trust until approximately six months after the judgment for dissolution was entered. After preliminary challenges to the law firm's standing, the court allowed Pedersen & Houpt to represent its own interests insofar as the ruling affected the award of attorney fees.

On June 4, 1990, six months after the petition was filed, the trial court granted Steven's request for relief and ordered that the

evidence of his expenditures be presented *in camera* for a prove up. The court barred Pedersen & Houpt from that hearing, in part because of the "ongoing relationship that the law firm of Pedersen and Houpt has had with [Albert Franks, Clarette's father]." The court did not think it would serve the best interests of the child for the law firm to participate in the closed hearing in which details of Steven's investigation into Falcon's whereabouts would be revealed. The trial court appointed a trustee, however, as an officer of the court and directed the trustee to review Steven's expenses and to evaluate their legitimacy and reasonableness.

Because of her absence, Clarette Kriegsman has neither challenged the trust imposed on her share of the property nor appealed from the trial court's findings in the judgment for dissolution of marriage. Hence, the trial court correctly determined that Pedersen & Houpt could not challenge Steven's petition except insofar as it affected the firm's fee award.

Pedersen & Houpt first contends that the trial court erred in modifying the property award set out in the judgment for dissolution because Steven's petition failed to satisfy the requirements for post-judgment relief pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401).

The trial court found, however, that the disposition of the marital residence in the judgment of dissolution was "in the nature of child support" and as such may be modified at any time upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) The trust in this case was expressly created to facilitate Falcon's return, and the court commented, "Since the trust is in the nature of child support, it is my ruling that it makes absolutely no—that certainly [Steven] can get credit for funds that were spent prior to the entry of the judgment of dissolution of marriage."

■■ We agree with the trial court. This is not a case in which one spouse tries to alter property rights that have vested pursuant to a divorce decree. (See *In re Marriage of Redmer* (1982), 111 Ill. App. 3d 317, 443 N.E.2d 1075 (rejecting husband's attempt two years after divorce to obtain exclusive possession of the former marital home on the theory that the modification of the judgment could be viewed as in the nature of "child support").) Unlike the situation in *Redmer*, here Clarette's interest in the marital residence was impressed with a trust for the benefit of the child from the outset. The terms of the judgment provide that the trust assets are to "be first expended in an effort to secure the prompt and

safe return of the child" to the jurisdiction. The judgment of dissolution also requires the appointed trustee to report to the court periodically and provides that "[a]ny trust property left over after [Falcon's return] may be sold or otherwise liquidated in order to pay the attorney's fees set forth in this Judgment, if those fees cannot be satisfied in any other manner."

The judgment of dissolution accordingly sets forth this priority of equitable claims against the trust assets: (1) money needed to secure Falcon's return or otherwise serve his best interests and (2) money to pay the attorney fees, contingent upon there being assets left upon Falcon's return and the unavailability of other sources to satisfy the fee award. Any remaining balance would belong to Clarette. Such an arrangement clearly demonstrates that Clarette's interest in the property had not "vested" and become unalterable by the terms of the judgment for dissolution. Accordingly, we conclude that Steven was not required to proceed by way of a section 2—1401 petition for post-judgment relief.

The sole question remaining is whether the trial court abused its discretion in barring Pedersen & Houpt from attending or participating in the prove up of Steven's claimed credits against the trust property. The law firm claims that, since it had standing to protect its fee award, there was no basis upon which the court could properly bar the firm from the prove up.

Contrary to Pedersen & Houpt's position, there was an excellent reason for the court to proceed as it did. Steven had paid private investigators to locate Falcon and did not want to reveal the progress of his search to his ex-wife's attorneys, who, incidentally, maintained an ongoing relationship with her father. The court-appointed trustee was charged with reviewing Steven's documentation and verifying the reasonableness of the sums paid. The trial court also assured the law firm that it would be entitled to the trustee's general report concerning the expenses incurred. The court reviewed each bill for which reimbursement or credit was requested. Following two hearings, one of which was conducted outside the presence of Pedersen & Houpt, the trial court entered an order finding that Steven had spent in excess of $65,210.02 in efforts to locate the child and that such expenditures were reasonably and necessarily incurred. Consequently, the court credited that amount as an offset against the sum of $65,000 that Steven owed Clarette for her one-half interest in the parties' cooperative apartment. The court implemented its ruling by directing the trustee to sign the

necessary papers for the assignment of Clarette's interest in the residence to Steven.

The court declined Pedersen & Houpt's request to participate in the *in camera* hearing because "that might imperil the safe return of [Falcon] to the jurisdiction, and that has to be of primary importance." In such a sensitive matter the court was not required to choose an alternative way of ensuring confidentiality, such as ordering the law firm not to reveal details of Steven's ongoing search for his son.

In reviewing the entire case, we find no abuse of discretion whatsoever, even though the *incidental* result of the court's rulings may be, as the law firm complains, to "give with one hand and take away with the other."

For the foregoing reasons, we affirm the trial court in all respects.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.