MOORE, Judge,
concurring in part, concurring specially in part, and concurring in the result in part.
I concur in all aspects of the main opinion except that part pertaining to rehabilitative alimony, as to which I concur in the result. I also write specially to explain more fully why this court cannot reverse the judgment of the Jefferson Circuit *1194 Court (“the trial court”) in this case insofar as it divides the marital property.
In a divorce proceeding in which both parties seek an equitable distribution of marital assets, the parties jointly bear the burden of presenting evidence as to the valuation of those assets. Edwards v. Edwards, 26 So.3d 1254, 1261 (Ala.Civ.App.2009). If the parties fail to present such evidence, the trial court is left largely to guess or speculate as to the fairness of its property division. Smith v. Smith, 682 S.W.2d 834, 836 (Mo.Ct.App.1984). However, a trial court cannot be put in error for making such a speculative determination that was due, at least in part, to the fault of the appealing party. In re Marriage of Mullins, 121 Ill.App.3d 86, 90, 458 N.E.2d 1360, 1363, 76 Ill.Dec. 560, 563 (1984).
In this case, the trial court heard evidence indicating that the husband operated a subchapter S corporation that provided therapeutic services to its clients. That corporation owned GPS devices and business equipment and leased a building with an option to purchase, which would mature in 2020. Some exhibits indicated that, although the business had generated significant income over the years, due to its operating expenses the business had operated at a net loss since 2004. According to the husband, the capital for the business came from a $50,000 line of credit secured by the marital home. One document indicated that the business had once been valued at $340,000, but the business’s accountant disclaimed the accuracy of that document at the trial.
By providing the trial court only this general information, and by not providing any direct evidence as to the specific value of the corporation, the husband essentially placed the burden on the trial court to ascertain the value of his business interest. The trial court could have done a great deal of research and determined how to value an interest in a closely held subchap-ter S corporation and, from that research, ascertained from the scant evidence before it that the corporation probably had little independent value due to the pass-through nature of such business organizations. See Hill v. Commissioner of Internal Revenue, 100 T.C.M. (CCH) 513 (2010) (explaining that income, losses, deductions, and credits flow through a subchapter S corporation directly to its individual shareholders). The trial court also could have determined that the income generated from the business should be considered personal income of the husband and that only certain assets retained by the corporation and vital to its continued operation should be considered in determining its value. See In re Marriage of Joynt, 375 Ill.App.3d 817, 820-21, 874 N.E.2d 916, 919, 314 Ill.Dec. 551, 554 (2007) (explaining how to value subchapter S corporations). The trial court also could have determined that the lease with an option to buy was merely a contingent asset of the corporation with little or no value. See Grelier v. Grelier, 63 So.3d 668, 673-74 (Ala.Civ.App.2010) (holding that contingent assets should not be included in computation of value of marital estate, but should be treated separately); Keff v. Keff, 757 So.2d 450 (Ala.Civ.App.2000) (treating only options that have matured as marital assets); and Dew v. Dew, 390 S.W.3d 764, 770 (Ark.Ct.App.2012) (financial experts testified that similar option had no value, so failure of trial court to include option in marital estate was harmless). However, the law does not place such a burden on the trial courts of this state; the law places the burden of proving the valuation of marital property squarely on the parties. Although it appears to me that the property division probably was not equitable, I agree that the trial court cannot be *1195 put in error for concluding otherwise under these circumstances.
As for the alimony award, although the husband “bases most of his argument pertaining to the award of alimony on his contention that he lacks sufficient income to pay the alimony award,” 116 So.3d at 1192, and although I agree that the trial court did not err in finding that the husband had the ability to pay the award, the husband also argues that the wife failed to present evidence of her need for rehabilitative alimony, an argument unaddressed by the main opinion. I do not find the husband’s argument on this point persuasive.
The husband correctly argues that rehabilitative alimony is intended to provide support for a dependent spouse for a limited period of reeducation or retraining following a divorce so that the dependent spouse may gain skills to become self-sufficient. See Enzor v. Enzor, 98 So.3d 15, 23 (Ala.Civ.App.2011). In this ease, the wife has a bachelor’s, a master’s, and a doctorate degree that qualify her for reemployment without additional training or reeducation, which the wife admitted at trial. The record contains no evidence indicating that the wife needs income or time to be retrained or to otherwise reestablish her working credentials.
However, “ ‘rehabilitative alimony[’] ... generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained.” Molnar v. Molnar, 173 W.Va. 200, 202, 314 S.E.2d 73, 76 (1984). In this case, the trial court received evidence indicating that the wife has long cared for her two children, the youngest of which was 15 at the time of the trial. The trial court could have determined that, although the wife has marketable labor skills, it would be reasonable for the wife to remain at home to care for the children, especially considering that the youngest child suffers from psychiatric problems, and that the wife needs support until the children become more independent and the wife has had a reasonable opportunity thereafter to reenter the labor market.
The husband complains that the wife did not need $360,000 in rehabilitative alimony spread out over five, years because she already has $86,000 saved from her inheritance. The wife testified that she had earmarked her remaining inheritance funds for the postsecondary education of the children. The parties had purchased Prepaid Affordable College Tuition plans for the children, but the oldest child was already planning on attending a conservatory out of state, which would require extra funding. The trial court reasonably could have determined that those funds would be better served in providing the children postminority support rather than in being consumed by the wife to maintain her standard of living over the next five years. Thus, the trial court reasonably could have determined that the wife had established a need for the amount of rehabilitative alimony awarded. See generally Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010) (explaining that recipient spouse must prove need for periodic alimony and the trial court should consider separate estate of spouse in calculating amount of need).