T.C. Memo. 2010-268

UNITED STATES TAX COURT

JAMES A. HILL, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2620-07.                   Filed December 8, 2010.

James A. Hill, Jr., pro se.

<u>Kristen I. Nygren</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes of $86,836 and $133,303 and
accuracy-related penalties under section 6662(a)[1] of $17,367 and

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), as amended, in effect for the
years in issue, and all Rule references are to the Tax Court
                                        (continued...)

$26,661 for 2003 and 2004, respectively. Petitioner filed a timely petition contesting respondent's determinations. After concessions,[2] the issues for decision are: (1) Whether petitioner failed to report his pro rata share of ordinary income from an S corporation for 2003 and 2004; (2) whether petitioner failed to report commission income earned by his sole proprietorship in 2003 and 2004; (3) whether and to what extent certain expenses petitioner incurred in 2004 are deductible; and (4) whether petitioner is liable for the section 6662(a) accuracy-related penalty. The remaining issues are computational.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Georgia when the petition was filed.

Petitioner has been active in the real estate industry in Georgia as a land developer and a licensed real estate broker

---

[1](...continued)
Rules of Practice and Procedure. All monetary figures have been rounded to the nearest dollar.

[2]The parties agree that petitioner is entitled to deduct $22,203 for depreciation and sec. 179 expenses and $9,100 for commissions and fees in 2003. Petitioner concedes that he is not entitled to deduct $6,204 for contract labor in 2003, $8,000 for alimony in 2003, or $24,921 for alimony in 2004. Respondent concedes that for 2004 petitioner is entitled to deduct $13,019 for commissions and fees, $6,239 of the $55,186 depreciation adjustment, and $10,511 of the $22,236 adjustment for legal and professional fees.

since 1973.  Petitioner generally conducts business through his sole proprietorship, Real Estate North.  Petitioner reported Real Estate North's 2003 and 2004 income and expenses on Schedules C, Profit or Loss From Business, using the cash accounting method.  Petitioner holds an undergraduate degree in real estate and two master of business administration (MBA) degrees--one in finance, the other in real estate--from Georgia State University.

I.   The Huntington Park Property

In 2002 petitioner identified a 28-acre piece of property (the Huntington Park property) in West Cobb County, Georgia, that he hoped to develop into a residential subdivision.  Petitioner formed a limited liability company, Parkwood Development Corp. (Parkwood), to acquire the property.  Petitioner was the president of Parkwood, and he and his then wife, Cynthia Taylor Hill (Mrs. Hill), were each 50-percent shareholders in Parkwood.  At all relevant times, Parkwood was an S corporation.

Petitioner contacted the seller of the Huntington Park property, Haven Exchange Services, L.L.C., a qualified intermediary[3] for McCray Properties, Inc., and negotiated for Parkwood to purchase the Huntington Park property for $1.1 million.  The purchase price included a $100,000 broker's

---

[3]Haven Exchange Services, L.L.C., is in the business of serving as a qualified intermediary in sec. 1031 exchanges.

commission to Real Estate North.  Petitioner secured a loan from Branch Bank & Trust to fund the purchase.

Petitioner attended the real estate closing on February 7, 2003, in his dual capacity as broker and as the purchaser's representative.  At the closing, Robert Garrison (Mr. Garrison), the closing attorney, credited to Real Estate North's account $10,000 in earnest money that Real Estate North had been holding in escrow from Parkwood.  Mr. Garrison also tendered a check to petitioner, payable to Real Estate North, for $90,000. Petitioner informed Mr. Garrison that he did not want to accept a commission on the sale, and he asked Mr. Garrison to redraft the closing agreement to eliminate Real Estate North's commission. Mr. Garrison refused to redraft the closing documents.  Instead, he asked petitioner to endorse the $90,000 check to Mr. Garrison's escrow account.  Mr. Garrison then applied the $90,000 to the purchase price of the Huntington Park property.  A February 7, 2003, closing statement signed by petitioner indicates that Real Estate North received a $100,000 commission in the transaction.  Petitioner, however, did not report the $100,000 commission on his 2003 Form 1040, U.S. Individual Income Tax Return.

Following the closing, Parkwood subdivided the Huntington Park property into 35 lots and began developing the property.  In May 2003 Parkwood entered into an agreement with Sullivan Homes

whereby Sullivan Homes agreed to purchase all 35 lots over an 18-month period.  The lot sales began on August 14, 2003, and continued throughout 2003 and 2004.

In December 2003 Sullivan Homes entered into an agreement with Real Estate North giving Real Estate North the exclusive right to market and sell homes at the Huntington Park property subdivision.  Petitioner had a sales trailer at the Huntington Park property for most of 2004 that he and two sales agents used for onsite sales work.  Real Estate North earned $360,314 in commission income from lot and home sales at the Huntington Park property in 2004, but petitioner reported only $346,254 on his 2004 Schedule C.

On its 2003 and 2004 Forms 1120S, U.S. Income Tax Return for an S Corporation, Parkwood reported ordinary income of $322,327 and $479,803, respectively.  Petitioner's pro rata shares of Parkwood's 2003 and 2004 income, as reported on Parkwood's Schedules K-1, Shareholder's Share of Income, Deductions, Credits, etc., were $161,164 and $239,902, respectively.  Parkwood's 2003 Form 1120S was prepared at petitioner's direction by Liberty Tax Service.  The accountant who prepared the Form 1120S advised petitioner in writing that petitioner was required to report his pro rata share of Parkwood's 2003 income on his

individual income tax return.[4]  Nevertheless, petitioner did not report any income attributable to Parkwood on either his 2003 or 2004 Federal income tax return.

II. <u>Petitioner's Divorce</u>

In January 2004 petitioner filed for divorce from Mrs. Hill in the Superior Court of Cobb County (Cobb County court). Parkwood was the primary asset at issue in petitioner and Mrs. Hill's divorce case.  During the divorce proceedings the Cobb County court concluded that petitioner, who was in control of Parkwood, was dissipating Parkwood's assets and mismanaging its day-to-day affairs to the detriment of the marital estate.  In July 2004 the Cobb County court ordered petitioner to give Mrs. Hill at least 72 hours' notice of any real estate closings associated with the Huntington Park property and to obtain Mrs. Hill's signature on all checks drawn on Parkwood's account. Subsequently, the Cobb County court found that petitioner had failed to comply with its order, and in March 2005 the Cobb County court held petitioner in willful contempt of court and removed him as an officer of Parkwood.  Petitioner's failure to cooperate ultimately led the Cobb County court to appoint a receiver to control Parkwood and conclude its affairs.

---

[4]Indeed, petitioner acknowledged at trial that he knew he was required to report the income.

Petitioner and Mrs. Hill's divorce case culminated with a jury trial in 2006. At the conclusion of the trial the jury determined that Parkwood should be dissolved and that petitioner and Mrs. Hill should receive $325,000 and $875,000, respectively, in the dissolution. The Cobb County court subsequently awarded Mrs. Hill $100,000 in attorney's fees. After the Final Judgment and Decree was adjusted accordingly, petitioner was awarded $225,000 and Mrs. Hill was awarded $975,000 with respect to Parkwood.

## III. Petitioner's Home Office

In 2004 petitioner purchased a three-story townhouse in Atlanta, Georgia. The upper level of the townhouse consists of two bedrooms and two bathrooms; the main level consists of a foyer, an eat-in kitchen, a dining room, a living room, a den, and a powder room; and the lower level consists of a two-car garage, storage space, and approximately 650 square feet of unfinished space.

Shortly after moving in, petitioner hired a decorator and spent $35,710 to furnish the main floor. Petitioner used the main floor (with the exception of the kitchen) as an office suite. Specifically, he used the dining room as a conference room and the living room as an informal sitting area for business meetings. Petitioner estimated that in 2004 he had 15 to 20 meetings in his home office suite with subcontractors and other

business associates.  Petitioner also used the storage space on the lower level and one-half of the garage to store office equipment, supplies, and office furniture.

Petitioner also used the main floor for recreational and personal activities in 2004.  Petitioner and his girlfriend, Roberta W. Taylor (Ms. Taylor), occasionally watched television on the main floor and on at least two occasions hosted church and homeowners association meetings on the main floor.  Moreover, the townhouse's only entrance is on the main floor, and petitioner and Ms. Taylor used the main floor whenever they entered or left the townhouse, the kitchen, and the other levels.

On his 2004 Schedule C petitioner deducted $56,800 in depreciation and section 179 expenses.  Petitioner's depreciation and section 179 expenses included $35,710 for office furniture, $13,237 for a Harley Davidson motorcycle petitioner purchased in 2004, $4,228 for a Ford Explorer sport utility vehicle, and $2,011 for petitioner's personal residence.  Petitioner did not keep any logs or records with respect to the motorcycle.  Petitioner also deducted $12,824 attributable to the business use of his home and $22,236 for legal and professional services in 2004.

On November 6, 2006, respondent issued a notice of deficiency with respect to petitioner's 2003 and 2004 Federal income tax returns, in which he determined that petitioner (1)

failed to report his pro rata share of Parkwood's income for 2003 and 2004, (2) failed to report the $100,000 commission Real Estate North earned on the sale of the Huntington Park property in 2003 and $14,060 of commission income Real Estate North earned for 2004, (3) improperly deducted $55,186 in depreciation and section 179 expenses for 2004, (4) improperly deducted $12,824 for the business use of his home in 2004, and (5) improperly deducted $22,236 for legal and professional fees for 2004.[5] Respondent also determined that petitioner was liable for the accuracy-related penalty under section 6662(a) for 2003 and 2004. Petitioner timely filed a petition in this Court.

OPINION

I. Burden of Proof

Ordinarily, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that they are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The U.S. Court of Appeals for the Eleventh Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has held that for the presumption of correctness

---

[5]Respondent initially determined that only $1,614 of petitioner's $56,800 depreciation and sec. 179 expenses for 2004 was deductible. Respondent has since conceded $6,239 of the remaining $55,186 depreciation and sec. 179 expenses and $10,511 of the $22,236 legal and professional fee deduction. See supra note 2.

to attach in unreported income cases, the determination must be accompanied by "'some evidentiary foundation linking the taxpayer to the alleged income-producing activity'", Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993) (quoting Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672 (1977)), affg. T.C. Memo. 1991-636. A determination that is unsupported by any evidence is arbitrary and erroneous, Weimerskirch v. Commissioner, supra at 362, but the required showing is minimal, Blohm v. Commissioner, supra at 1549 (citing Carson v. United States, 560 F.2d 693, 697 (5th Cir. 1977)). Once the minimal evidentiary showing has been made, the presumption of correctness attaches, and it becomes the taxpayer's burden to prove that the determination is arbitrary or erroneous. Blohm v. Commissioner, supra at 1549. Respondent has linked petitioner to the income-producing activity by demonstrating that (1) petitioner was a 50-percent shareholder in Parkwood in 2003 and 2004 and (2) petitioner was the sole proprietor of Real Estate North in 2003 and 2004. Accordingly, the presumption of correctness attaches to respondent's determination that petitioner failed to report income in 2003 and 2004.

If the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability and meets certain other requirements, section 7491(a)

shifts the burden to the Commissioner with respect to these factual issues. Petitioner does not assert that section 7491(a) shifts the burden to the Commissioner, and the record does not permit us to conclude that section 7491(a) applies. Consequently, petitioner bears the burden of proof with respect to all factual issues.

## II. Unreported Income

### A. Parkwood

An S corporation is not subject to the Federal corporate income tax. Sec. 1363(a). Instead, an S corporation's items of income, gain, loss, deduction, and credit--whether or not distributed--flow through to the shareholders, who must report their pro rata shares of such items on their individual income tax returns for the shareholder taxable year within which the S corporation's taxable year ends. Sec. 1366(a); Mourad v. Commissioner, 121 T.C. 1, 3 (2003), affd. 387 F.3d 27 (1st Cir. 2004); see also, e.g., Dunne v. Commissioner, T.C. Memo. 2008-63; sec. 1.1366-1(a), Income Tax Regs. The character of any item is passed through to the shareholder. Sec. 1366(b).

Petitioner does not dispute that Parkwood made a valid subchapter S election that was effective for 2003 and 2004, that Parkwood earned ordinary income of $322,327 and $479,803 in 2003 and 2004, respectively, or that his pro rata shares of Parkwood's 2003 and 2004 income were $161,164 and $239,902, respectively.

Instead, petitioner argues that he was not required to report the income in 2003 and 2004 because he did not receive distributions from Parkwood in those years.[6] Petitioner's argument is without merit (indeed, petitioner suggested at trial that he knew his position was contrary to the Code). As discussed in the preceding paragraph, it is well established that an S corporation shareholder is required to report his or her pro rata share of the S corporation's income--whether or not distributed--on the shareholder's individual income tax return for the shareholder taxable year within which the S corporation's taxable year ends. Sec. 1366(a); Mourad v. Commissioner, supra at 3; sec. 1.1366-1(a), Income Tax Regs.; see also Burke v. Commissioner, T.C. Memo. 2005-297 (a partner is taxable on his distributive share of partnership income when realized by the partnership despite a dispute among the partners as to their respective distributive shares), affd. 485 F.3d 171 (1st Cir. 2007). Accordingly, petitioner was obligated to report his pro rata shares of Parkwood's 2003 and 2004 income on his 2003 and 2004 tax returns,

---

[6]Petitioner, who bears the burden of proof, see Rule 142(a), testified at trial that he reported the income from Parkwood when he received it; i.e., when the Cobb County court issued its Final Judgment and Decree and Order on Defendant's Motion for Attorney Fees in late 2006. However, on his 2006 Federal income tax return, petitioner did not report any income from Parkwood, and the revenue agent who audited petitioner's 2005-2007 Federal income tax returns credibly testified at trial that petitioner did not report the income in 2006 or any other year.

and we sustain respondent's income adjustments with respect to Parkwood.

B.   Real Estate North

Section 61(a) defines gross income as "all income from whatever source derived, including (but not limited to) * * * Compensation for services, including fees, commissions, fringe benefits, and similar items".  The definition is construed broadly and extends to all accessions to wealth, clearly realized, over which the taxpayer has complete control. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  A cash basis taxpayer generally receives income as of the date a check is received, unless the taxpayer's control of the proceeds is subject to substantial limitations or restrictions.  Kahler v. Commissioner, 18 T.C. 31, 34-35 (1952) (holding that a commission check received on December 31, 1946, was taxable income in 1946 even though the taxpayer did not cash the check until January 2, 1947).  A taxpayer ordinarily cannot avoid recognizing income by refusing to accept a check.  See Hamilton Natl. Bank v. Commissioner, 29 B.T.A. 63, 67 (1933); see also Stoller v. Commissioner, T.C. Memo. 1983-319.  Likewise, a taxpayer cannot avoid recognizing income of which he is the true earner by attempting to transfer his right to the income to someone else. See Lucas v. Earl, 281 U.S. 111, 114-115 (1930).

Respondent determined that petitioner failed to report the $100,000 commission earned by Real Estate North in 2003 in the transaction in which Parkwood purchased the Huntington Park property. Petitioner counters that the commission was not income because he never actually received the commission but instead applied the commission to reduce the purchase price of the Huntington Park property. Petitioner's argument is unavailing for several reasons.

First, the record is clear that petitioner did, in fact, realize the commission. Petitioner testified that he asked Mr. Garrison to redraft the closing documents to eliminate the commission, but Mr. Garrison refused. Whatever discussions occurred at the closing, the fact remains that petitioner was tendered a $90,000 commission check and signed the closing statement affirming that Real Estate North received a $100,000 commission in the transaction. The commission was not subject to any limitations or restrictions. Thus, the commission was income when tendered. See Kahler v. Commissioner, supra at 34-35; Stoller v. Commissioner, supra. The fact that petitioner did not deposit the check into his or Real Estate North's bank account is immaterial. Petitioner cannot alter the tax consequences of the transaction by claiming, after the fact, that he did not want to accept the commission. See Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974) ("a

transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred").

Second, both this Court and the U.S. Court of Appeals for the Eleventh Circuit have rejected the argument that a commission paid to a broker or agent who is purchasing for his own account is a purchase price reduction and is not income to the recipient. Commissioner v. Daehler, 281 F.2d 823 (5th Cir. 1960),[7] revg. 31 T.C. 722 (1959); Williams v. Commissioner, 64 T.C. 1085, 1088 (1975) ("The fact that the commissions received by * * * [the taxpayer] were derived from transactions in which he was purchasing property for his own account does not alter the commissions' character as income to him"); see also Olken v. Commissioner, T.C. Memo. 1987-589; McIver v. Commissioner, T.C. Memo. 1977-174. Petitioner earned his commission as a broker by negotiating the purchase of the Huntington Park property, structuring the transaction, and arranging financing. See Olken v. Commissioner, supra. Thus, even if petitioner had not

---

[7]The U.S. Court of Appeals for the Eleventh Circuit was established on Oct. 1, 1981, pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, Pub. L. 96-452, 94 Stat. 1994. In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the U.S. Court of Appeals for the Eleventh Circuit adopted the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down before the close of business on Sept. 30, 1981, as the governing law for the Eleventh Circuit. Accordingly, Commissioner v. Daehler, 281 F.2d 823 (5th Cir. 1960), revg. 31 T.C. 722 (1959), is binding precedent in the Eleventh Circuit.

received the $100,000 commission but instead transferred his rights to the money to Parkwood, the transfer would constitute an anticipatory assignment of income. See Lucas v. Earl, supra at 114-115.

Finally, we note that "the Commissioner may bind a taxpayer to the form in which the taxpayer has cast a transaction." Bradley v. United States, 730 F.2d 718, 720 (11th Cir. 1984); see also Commissioner v. Natl. Alfalfa Dehydrating & Milling Co., supra at 149 ("while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not"). Petitioner deliberately structured the purchase of the Huntington Park property so that Real Estate North would receive a $100,000 commission. Petitioner cannot avoid paying tax on the income by attempting, after the fact, to recharacterize the commission.

Respondent also determined that petitioner failed to report $14,060 of commission income in 2004. Petitioner did not specifically assign error to the determination in his petition, nor did he contest the determination at trial or in his posttrial brief. Accordingly, we conclude that petitioner has conceded the issue. See Rule 34(b)(4). We sustain respondent's income adjustments with respect to Real Estate North.

III. <u>Deductions</u>

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to the deductions claimed. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); see also Rule 142(a). Section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In some instances, a taxpayer must satisfy additional requirements to deduct expenses that would otherwise be deductible under section 162. See, e.g., secs. 274(d), 280A. No deduction is allowed for personal, living, or family expenses. Sec. 262(a). As explained below, petitioner is not entitled to deduct expenses in excess of the amounts respondent allowed because he has not established that such expenses were deductible.

A.    <u>Home Office Expenses</u>

Section 280A(a) disallows any deduction, otherwise allowable under the Code, with respect to the business use of a taxpayer's personal residence, except as provided in section 280A. Section 280A(c)(1) provides, in relevant part:

> (1)  Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--

> (A) as the principal place of business for any trade or business of the taxpayer, [or]
>
> (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, * * *

For a deduction to be allowed under section 280A(c)(1), the taxpayer must establish that a portion of his personal residence was (1) exclusively used, (2) on a regular basis, (3) for one of the purposes enumerated in section 280A(c)(1).[8]  Hamacher v. Commissioner, 94 T.C. 348, 353 (1990).  Moreover, section 280A(c)(2) provides that section 280A(a)--

> shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory or product samples of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business.

Petitioner argues that he was entitled to deduct $12,824 in 2004 with respect to the business use of his home because he used

---

[8]Where a taxpayer's business is conducted in part at a home office and in part at other locations, the following two primary factors are considered in determining whether the home office qualifies under sec. 280A(c)(1)(A) as the taxpayer's principal place of business:  (1) The relative importance of the activities performed at each business location and (2) the amount of time spent at each location.  Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993); see also Strohmaier v. Commissioner, 113 T.C. 106, 112 (1999).

the main floor (with the exception of the kitchen) exclusively for business and most of the ground floor exclusively for storage of office equipment and furniture used in his trade or business. The only evidence petitioner introduced in support of his argument was his own testimony and that of his girlfriend, Ms. Taylor. Although petitioner testified that he used the main floor of the townhouse exclusively for business in 2004, Ms. Taylor testified that she occasionally watched television on the main floor and that she and petitioner used the main floor on at least two occasions to host church and homeowners association functions. Moreover, Ms. Taylor testified (and the blueprints confirm) that she and petitioner used the main floor to enter and leave the townhouse, the kitchen, and the other levels. We do not find petitioner's testimony on the extent of his business use of the main floor to be credible given Ms. Taylor's testimony that the main floor was not used exclusively for business. Accordingly, petitioner has not met his burden of proving that he used the main floor of his residence exclusively and on a regular basis for one of the purposes enumerated in section 280A(c)(1), and we hold that he is not entitled to deduct expenses paid or

incurred with respect to the business use of the main floor of his home in 2004.[9]

We also find that petitioner has failed to prove that he is entitled to deduct expenses attributable to his use of part of the ground floor of his townhouse for storage. Petitioner testified that in 2004 he used the storage space and one-half of the garage to store office furniture and supplies. Once again, even if we were to accept petitioner's testimony as credible, his use of the space did not satisfy the section 280A(c)(2) requirement because he did not testify that he used the space to store inventory or product samples, nor is he in the business of selling products at retail or wholesale. Accordingly, petitioner is not entitled to deduct expenses attributable to his business use of the ground floor of his home.

B.    Depreciation and Section 179 Expense

    1.    Furniture

The costs of furnishing a home ordinarily are nondeductible personal expenses. Sec. 262(a); Turner v. Commissioner, 68 T.C. 48, 51 (1977); sec. 1.262-1(b)(3), Income Tax Regs. Petitioner

---

[9]Because petitioner has failed to satisfy the exclusive use test, we need not decide whether petitioner's home office was his principal place of business or a place of business used by clients or customers in meeting or dealing with petitioner in the course of his trade or business. See sec. 280A(c)(1).

argues that the costs of furnishing the main floor were ordinary and necessary expenses in his business because he used the main floor as a model home within his own home. As petitioner explained at trial:

> I think atmosphere, color, surroundings, when people walk into a subdivision and walk into a model home, it's very important they feel like it's a place that they would want to live. That's the same way I furnished my office, and again, by the same interior designer from Ethan Allen.

While the furnishing of a model home may play an important role in the success or failure of a real estate development, it does not follow that it was ordinary or necessary for petitioner to decorate the main floor of his personal residence in the same manner he furnished his model homes. Petitioner's townhouse was not a model home, and the costs of furnishing it to suit his tastes are quintessentially personal expenses. We sustain respondent's adjustment.

2. Motorcycle

Section 274(a)(1)(A) generally disallows deductions, otherwise allowable under the Code, involving entertainment, amusement, or recreational activities, and section 274(a)(1)(B) generally disallows deductions, otherwise allowable, incurred

with respect to a facility[10] used in connection with such activities. Section 274(d) provides, in relevant part:

> SEC. 274(d). Substantiation Required.--No deduction or credit shall be allowed--
>
> *    *    *    *    *    *    *
>
>> (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity,
>
> *    *    *    *    *    *    *
>
> unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

The strict substantiation requirements of section 274(d) also apply to any "listed property", sec. 274(d)(4), which includes,

---

[10]Sec. 274 does not define the term "facility". However, the legislative history reveals that the term "facility" "includes any item of real or personal property which is owned, rented, or used by a taxpayer in conjunction or connection with an entertainment activity", and includes, e.g., "yachts, hunting lodges, fishing camps, swimming pools, tennis courts, and bowling alleys. Facilities also may include airplanes, automobiles, hotel suites, apartments, and houses (such as beach cottages and ski lodges) located in recreational areas." H. Conf. Rept. 95-1800, at 249 (1978), 1978-3 C.B. (Vol. 1) 521, 583; S. Rept. 95-1263, at 174-175 (1978), 1978-3 C.B. (Vol. 1) 315, 472-473; see also Ireland v. Commissioner, 89 T.C. 978, 981-982 (1987) (discussing the legislative history of sec. 274).

inter alia, "any * * * property used as a means of transportation," sec. 280F(d)(4)(A)(ii).

Petitioner contends that he should be allowed to deduct $13,237 with respect to his motorcycle in 2004 because he used the motorcycle exclusively in his business. Specifically, petitioner testified that he purchased the motorcycle solely for the purpose of riding with pavers, pipe contractors, and other subcontractors, and that the rides allowed petitioner to develop a sense of "esprit de corps" with the subcontractors, which had a beneficial effect on his and their work. Even if we were to accept petitioner's testimony as credible, which we do not, we would nevertheless conclude he is not entitled to deduct expenses with respect to his motorcycle because he failed to comply with the strict substantiation requirements of section 274(d).

Petitioner concedes that his motorcycle, like a yacht, is a facility used in connection with an activity generally considered to constitute entertainment. Alternatively, petitioner's motorcycle qualifies as listed property, for which no deduction is allowed unless the taxpayer meets strict substantiation requirements with respect to the property. However, petitioner has failed to substantiate by adequate records or by sufficient evidence corroborating his own testimony the amount of expenses attributable to the motorcycle, the time and place of his use of the motorcycle, the business purpose of the expense, or his

relationship with the other riders.  Accordingly, petitioner may not deduct expenses relating to his purchase or use of the motorcycle in 2004.

    C.   <u>Legal Fees</u>

The deductibility of legal fees depends upon the origin of the claim with respect to which the fees were incurred.  <u>United States v. Gilmore</u>, 372 U.S. 39, 49 (1963).  Legal fees incident to a divorce generally are not deductible, because they are personal.  Sec. 262; <u>United States v. Gilmore</u>, <u>supra</u>; <u>Hicks Co. v. Commissioner</u>, 56 T.C. 982, 1023 (1971) (citing <u>United States v. Patrick</u>, 372 U.S. 53 (1963)), affd. 470 F.2d 87 (1st Cir. 1972); sec. 1.262-1(b)(7), Income Tax Regs.  However, divorce-related legal fees that are allocable to tax advice or collection of taxable alimony or incurred in a dispute regarding entitlement to business profits may be deductible under section 212.  <u>Wild v. Commissioner</u>, 42 T.C. 706, 711 (1964) (legal fees incurred to produce monthly alimony payments, which were includable in the taxpayer's gross income, were deductible under section 212); see also <u>Hahn v. Commissioner</u>, T.C. Memo. 1976-113 (legal fees incurred to protect the taxpayer's right to income from marital property were deductible under section 212); sec. 1.262-1(b)(7), Income Tax Regs.  In <u>Hahn v. Commissioner</u>, <u>supra</u>, the taxpayer incurred legal fees in connection with her divorce.  The taxpayer's attorney estimated that 77 percent of the time he

spent on the case was related to the issue of the taxpayer's interests in certain of her husband's properties.  Id.  We held that "the fees attributable to legal work involving the claim of ownership in the * * * [property] are not deductible, but those attributable to the award of income from the * * * [property] are deductible."  Id.  We went on to determine that 30 percent of the taxpayer's legal expenses were attributable to matters involving the taxpayer's right to income and were therefore deductible under section 212.  Id.

Petitioner argues his legal fees were incurred for the primary purpose of protecting his interest in Parkwood, but the record reflects only that the payments were made to lawyers and law firms that handled petitioner's divorce.  Unlike the taxpayer in Hahn v. Commissioner, supra, petitioner has not introduced any evidence that would permit us to estimate how much, if any, of his legal fees was incurred to protect his interest in Parkwood.  Petitioner also made no attempt to further allocate his legal fees as between his ownership interest in Parkwood and his right to income from Parkwood.  Accordingly, we conclude that petitioner may not deduct legal fees incurred in 2004 in connection with his divorce, except as respondent already allowed.

## IV.  Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to, inter alia, any substantial understatement of income tax.  A substantial understatement is any understatement that exceeds the greater of (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000.  Sec. 6662(d)(1)(A).  An understatement is the excess of the amount of tax required to be shown on the return for the taxable year, over the amount of tax actually shown on the return.  Sec. 6662(d)(2)(A).

The amount of the understatement under section 6662(d)(2)(A) shall be reduced by that portion attributable to, inter alia, the tax treatment of any item by the taxpayer if there was substantial authority for such treatment.  Sec. 6662(d)(2)(B)(i).  Substantial authority is an objective standard based on an analysis of the law and its application to the relevant facts.  Lawinger v. Commissioner, 103 T.C. 428, 440 (1994); sec. 1.6662-4(d)(2), Income Tax Regs.  Substantial authority exists only if, taking into account all authorities, the weight of authority supporting the treatment is substantial in relation to

the weight of authority supporting contrary treatment.  Sec. 1.6662-4(d)(3)(i), Income Tax Regs.

No penalty shall be imposed under section 6662 with respect to any portion of an underpayment if the taxpayer had reasonable cause and acted in good faith with respect to such portion.  Sec. 6664(c).  In determining whether a taxpayer had reasonable cause and acted in good faith, all facts and circumstances are taken into account.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, the most important factor is the extent of the taxpayer's effort to assess his proper liability.  Id.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the taxpayer's education and experience.  Id.

The Commissioner generally bears the burden of production in any court proceeding with respect to any penalty or addition to tax, sec. 7491(c), but the taxpayer bears the ultimate burden of proof, Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet his burden of production under section 7491(c), the Commissioner must come forward with sufficient evidence that it is appropriate to impose the relevant penalty.  Id.  However, the Commissioner's obligation under section 7491(c) is conditioned on the taxpayer's assigning error to the penalty or addition to tax.  Swain v.

Commissioner, 118 T.C. 358, 363 (2002).  Where the taxpayer fails to assign error to such penalty or addition to tax, the taxpayer is deemed to have conceded the issue under Rule 34(b)(4).  Id.

Respondent determined that petitioner is liable for the section 6662(a) accuracy-related penalty for 2003 and 2004. Petitioner failed to assign error to the penalty in his petition, in his pleadings, or at trial.  Accordingly, petitioner is deemed under Rule 34(b)(4) to have conceded the issue, and respondent is not required to produce evidence that imposition of the penalty is appropriate.  In any event, respondent has satisfied his burden under section 7491(c) by demonstrating that petitioner's 2003 and 2004 Federal income tax returns substantially understated petitioner's income tax liabilities.  Petitioner has neither alleged nor proved that he had substantial authority for all or any portions of the understatements, nor has he demonstrated that he had reasonable cause or acted in good faith with respect to any portions of the underpayments.  On the contrary, petitioner suggested in his testimony that he knew his treatments of various items on his 2003 and 2004 Federal income tax returns were improper.  Accordingly, we conclude that imposition of the section 6662(a) penalty is appropriate.

V.    Conclusion

In summary, we conclude that petitioner (1) failed to report ordinary income from Parkwood on his 2003 and 2004 Federal income tax returns; (2) failed to report commission income earned by Real Estate North of $100,000 and $14,060 for 2003 and 2004, respectively; (3) improperly deducted expenses relating to the business use of his home, expenses relating to a Harley Davidson motorcycle, and legal fees incurred with respect to his divorce in 2004; and (4) is liable for the section 6662(a) and (b)(2) accuracy-related penalty.

We have considered the parties' remaining arguments and, to the extent not discussed herein, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.